Please be seated. Good afternoon. This is case number 4-13-0923 Lawrence Granthorst v. Salim Mamdani. Oh, I'm sorry, George Johnson. I'm sorry, I was on the wrong line. You're probably Mr. Mamdani, the lawyer. All right. Let's see. Mr. Mamdani, you're representing the appellant, and Mr. Timmerwolf, he's here representing the athlete. All right. You may proceed. I scared you there for a minute, didn't I? May it please the court, opposing counsel, this is an adverse possession and prescriptive easement case. I recognize it's the end of the day. This is probably not the most juicy case that you're going to deal with today. But these cases matter. They matter because at their core, what's happening is a deprivation of a property owner of his interest in property without compensation and without consent. Because of that, the law of Illinois has always protected property owners by giving them the benefit of every presumption, as well as imposing a clear and convincing standard of proof on the party claiming adversely or prescriptively. If the decision of this case stands, the protections that are traditionally eroded to property owners would be significantly eroded. They would be eroded because the trial court in this case first essentially eliminated the requirement that the claimant prove the boundaries of their adverse possession claim to a clear and convincing degree. Second, this case involved a mistaken boundary. And the trial court essentially said, well, sorry, it did not involve a mistaken boundary, beg your pardon. But the trial court instead applied the rules from mistaken boundary cases and said very minimal uses would justify the adverse possession claim here. With regard to the prescriptive easement claim, what the trial court did was essentially eliminate the exclusivity element from the claim itself. And as such, is just making it that much easier for a claimant to obtain a prescriptive easement. Finally, with regard to the remedies that were granted, the trial court essentially disconnected the proofs from the remedies that were granted and said, you don't necessarily have to prove everything that you're asking for. Well, if we think that you've got a prescriptive easement or an adverse possession claim, we'll give you the remedies that you're looking for without necessarily requiring that you show that they're necessary under the law and from the facts that you've proven. So turning to the adverse possession claim, the trial court's finding was against the manifest weight of the evidence. It was against the manifest weight because the evidence, let's first talk about the boundary. The boundaries that were initially claimed by the plaintiff in the case was a 10-foot strip. 10-foot running south from his property line to a curb and down. He testified extensively to the fact that his measurement was 10 feet from the property line to the edge of the curb, over and over and over again. All of the witnesses were questioned with reference to a 10-foot strip north of the curb. Then after the plaintiff's case is closed and after the defendant's case is started, there's a motion for leave to amend saying that we need to amend this to a 7.5-foot claim. No evidence was presented on that motion for leave to amend. And essentially, the trial court said, okay, fine, 10 is less than 7. Wasn't it made to conform to the evidence presented? The problem is, Your Honor, there was no evidence presented as to 7.5 feet. All the evidence presented, all of the testimony was as to a 10-foot strip north of the curb. Well, how are you hurt by this in any event? I mean, they originally sued claiming 10 feet. Subsequently, they say, no, it's only 7.5. And they prevailed at the trial level for 7.5 feet. Correct, Your Honor. So therefore, you're hurt how? So there's a couple different ways that we're hurt by that. One, I think the law says that you have to prove your boundaries to a clear and convincing degree. I don't know that that was proven. Well, apparently the trial thought it was to 7.5 feet. Correct, Your Honor. The harm to our client is no one's got a measurement of this. There's no testimony that's been presented that it is, in fact, 7.5 feet between the pin and the curb that is supposed to be reinstalled. We don't know at this point if we go back and start installing a curb, what happens if it's 8.5 feet? Because there's been no evidence presented. Well, the judgment of the court was 7.5, so we know that that's the extent of the relief that they've been awarded. And if the court looks at the evidence that was presented, that there is still a stub of this curb remaining, if it's, in fact, less than, if 7.5 doesn't get you all the way to there, we could have a situation where the Johnson's have been ordered to put in a curb at 7.5 feet that doesn't connect to the curb further along. And I don't know how that's supposed to be resolved. And the fact is, if Mr. Brantworth is making the claim, he's got to prove where his dimensions lie. Now, I don't disagree. He doesn't necessarily have to have a survey, and he made significant mention of that during the case. But whether you have a survey or not, you have to know where the boundaries actually lie. If he's going to say it's 10 feet, 10 feet, 10 feet, and then all of a sudden change it to 7.5, with no evidence to support that claim, it's not an amendment to conform with the proofs. It's an amendment to conform with something he changed his mind about. So what is it you expect us to do with that? To reverse on the grounds that what? That he has not proven that element of his claim. He's not proven the boundaries of his claim. So if the evidence shows 7.5 feet, does it matter as far as whether it was originally a 10-foot claim? If there was evidence presented in the trial court that it was 7.5 foot, at least to that element, yes. Now, that's not to say that the rest of the elements of the adverse possession claim were proven. And as to those elements, the evidence was clear. Mr. Miller and Ms. Holman clearly didn't know where the boundaries of their lot lines lay. They didn't know where their lot was specifically on the ground. But Mr. Bransworth testified from, I think it was roughly a month after he moved in. He knew exactly where his pens were. He knew his lot lines. He knew that the land he's now claiming prescriptively, or sorry, adversely, was not his. He knew it wasn't his. He testified he believed it was the City of Quincy's. And he testified he used it in a manner concurrent or consistent with the City of Quincy's use. In light of that, it's hard to say that his use just on that issue, on the claim of title, is inconsistent with the claim of title of the record owner. There is no case law that I'm aware of that says that a mistaken identity of the owner would justify changing the degree to which possession, actual, hostile, whichever one of the elements it specifically pertains to. And it's a little bit confusing, I submit, Your Honors, because sometimes the courts say- Isn't this a case where the trial court conducted a trial, heard all the evidence, and the issue before us is manifest, whether the court findings is contrary to manifest weight of the evidence? That's correct, Your Honor. So the court couldn't have- there's no evidence to support the court's finding in this regard? Not in light of the- the case law suggests that the degree of possession for an adverse possession claim, when you know where your boundaries are, must be more than what was proven here. And so when it finds that, for example, mowing the grass, I think collecting pine needles, children playing, shoveling the driveway, those uses- there are cases that say that those uses are sufficient to make an adverse possession claim. But the cases that find that are all mistaken boundary cases. And the law is clear that in mistaken boundary cases, the courts are going to give a little bit more leeway as to the openness, the hostility, the adversity, however you want to call it, of the uses. They're going to be more lenient with those. When you know it's not your land, the courts have said that evidence must show very clearly that you are claiming this land for your own, that it is not the record owner's land, that you are claiming it. And that wasn't done here. What was done here was very minimal uses. And as such, the trial court's finding was against the manifest weight of the evidence. To turn to the case more specifically, the requirement, again, I guess I've said this already, but the requirement of claim of title is a real element of the case. When Mr. Brandhorst says that I believed I didn't have title to the land and I believed I was using it concurrently or consistently, or inconsistent with the city of Quincy's title, even though the city of Quincy wasn't the title holder, I don't know how that can be evidence, clear and convincing evidence, that he was operating under a claim of title that was inconsistent with the actual owner. Again, the hostility, same thing. If he's saying that he believed the land belonged to somebody else, he knew it wasn't his, he's got to do more. All the cases that deal with this talk about putting in semi-permanent or permanent installations. You look at the Mann case, which is very factually similar here, and actually the claimant in Mann did more than Mr. Brandhorst did. The plaintiff in Mann actually graded the ground down, planted seed, planted grass, took care of it. I think there was also a swing set that was put onto the land. That was deemed to be insufficient in part because he knew it wasn't his land. So when you're trying to take through adverse possession and you know it's not yours, essentially what the case law teaches is that you've got to do something to make it very clear, something permanent or semi-permanent to show this is yours. Planting trees, erecting a structure on that land. That wasn't done here. Now, turn to the prescriptive easement claim. What trial court did was essentially eliminate the element of exclusivity. Mr. Brandhorst wants to argue the JS2 case essentially eliminates the exclusivity element. But the JS2 case dealt with a very narrow factual pattern and it talked about that in its decision. It talked about when you're dealing with railroad tracks running through a land where the easement starts and ends on the dominant estate land, we're not going to require a showing of exclusivity of the actual railroad tracks, just the exclusivity over the pieces of the easement, so to speak. This is not a case like that. This is, I guess for lack of a better way to put it, a garden variety easement claim where he's saying he's going over the Johnson's land to get to his driveway. And in those cases, the Catholic Bishop case is clear. You have to at least allege exclusivity, if not give some amount of proof before the presumption is rebutted. Here, Mr. Brandhorst. Okay, so here's my question. The court heard all these arguments that you made vigorously at trial. The court heard all these witnesses testify. The court found, nonetheless, that the plaintiff had prevailed. What part of those rulings by the court in specific did the court err? Well, I think as far as the prescriptive easement claim, it erred when it found that he had proven exclusivity, or rather that he didn't need to prove exclusivity. It's not exactly clear from the court's ruling, but clearly Mr. Brandhorst alleged concurrent use with the property owner. He then provided no testimony whatsoever of any exclusion of anyone, really, let alone the property owners. And while you can make the argument that in Catholic Bishop, the court's saying, well, you have to show something. The court mentions that there was some showing of use by the Catholic Bishop. What I would submit is that the use, in order to get to that point, you have to at least show exclusivity minimally, either allege it or probably more likely provide some evidence that you have excluded the true owner. He didn't do that. There was no proof that was presented to the trial court that he possessed that easement property exclusively. He didn't even plead that he possessed it exclusively. And in those circumstances, the trial court's finding of exclusivity as to the prescriptive easement was wrong. It was against the manifest weight of the evidence. Turning then, unless the court has any other questions on those issues, turning to the remedies that were granted, Mr. Brandhorst provided a bunch of evidence as to his uses of the property. His predecessors entitled uses of, and I'm talking now about the drive, the road. None of his proofs talked about, at least not consistent use, of any portion of that driveway beyond his own driveway. In other words, the property sits with, it's a long, I can't remember the exact length of it, I think it was 120 foot long road. His driveway sits roughly 20 feet from the eastern edge of the road. He didn't prove 20 years of use of that stretch beyond his own driveway. And therefore, to the extent that the trial court granted an easement over that portion of the road, assuming that the easement was granted appropriately, that much of the remedy should be removed. There's simply no proof to support 20 years of continuous use past the driveway. In addition, when you're going to impose a mandatory injunction to require that the Johnsons put back in a curb, replace the roadway to the condition that it was in prior, you've got to show some way that the changes impacted or impeded your use. Otherwise, the general rule is that the underlying property owner has the right to make modifications to their property, and that wasn't shown here. There was no testimony that ingress and egress was impeded by the installation of gravel as opposed to the broken up blacktop that was there before. There's certainly been no testimony about the requirement that the curb be in place in order for ingress and egress to be completed. And therefore, to the extent that the trial court ordered it, it's simply not supported by the evidence. There wasn't any evidence presented that said, I have to have a curb in order to park, or I have to have a curb in order to get to my driveway. The curb is simply thrown in because what Mr. Brandhorst basically wants is the ability to control everything about how this road looks. He wants to say that there shouldn't be a concrete entranceway. He wants to say what kind of grass should be there. He wants to say that it should be a certain surface, a certain type of surface. But he didn't introduce any evidence to say that those changes that were made were somehow impeding his ability to use that easement. Again, assuming, of course, that the easement was granted properly. And so, as to those remedies, both the depth, I guess, of the easement, as well as the re-installation of the curb and of the roadway as a whole, those remedies should not have been granted and they're not justified by the evidence that was presented. And so, as to those remedies, assuming, of course, that this court affirms the trial court's finding of the prescriptive easement, those remedies should be vacated because there's simply no connection in the evidence to those. Are the remedies addressed to the trial court's discretion? They are, Your Honor. Except if there's no evidence that supports those remedies, it would be an abuse of discretion to impose them. Your Honors, unless the court has any further questions, I would reserve any time, if I can, for rebuttal. Thank you. Thank you, Mr. Mamdani. We'll hear from you in rebuttal. Mr. Timurvoki? Good afternoon, Justices. May it please the Court, Counsel. This is a case that can all be shown in one picture. If you have an opportunity to review any exhibits, it's Plaintiff's Exhibit No. 2 and it tells... What does it tell us? It tells us exactly what happened in this case. This is an older subdivision, probably built in the 15th century. And this was a street for future development. It ends. But it was put in with the same curves. It was put in with the same asphalt pavement. But it dead ended. And at the end of it, a gravel driveway was put in it. What exhibit number is that? To lead to the house. What exhibit number is that? It's Plaintiff's Exhibit No. 2. Was it received in evidence? Yeah, but the reason I'm showing you this... Was it received in evidence? Yes. Yes, Your Honor. Sorry. The reason I'm showing you this is because this was one of the first exhibits to go in and one of the high points, I remember, is when the defendant testified. And he was questioned about this and Judge Adrian, at the conclusion of the questioning, looked at him and he said, Do you have knowledge of this before you bought it? And by the way, Mr. Johnson and his wife didn't buy the property until 2007. And the 20-year period had been proven prior to the time that they acquired the property. They first acquired a house at the end of this roadway. The roadway then turns into a small gravel road that goes to their house. Then, Mr. Johnson found out that this wasn't a public street, so he went ahead and acquired it privately through the previous owner's second wife. His first wife had died. That's when he started exercising and changing the road. But in any event, I remember Judge Adrian, after both counsel finished questioning Mr. Johnson, Mr. Johnson indicated in his testimony that his present wife had lived in this property, had lived at the end of this road. And her father was one of the developers of this subdivision. And the judge said, Well, how long have you been familiar with this particular road that we're talking about, what the fight's over? And he said, Well, I was married to my wife 42 years, and I dated her three years before that. So he said, Did it look like, was it looking like this when you started dating her? Yeah, pretty much. It's a little more worn down now. Is that what it looked like? It looked like a road then, it looks like a road now. And he agreed to that. And the point of this is, and why I'm saying this, is because when you look at the road, there's an area to the north of the road where Mr. Brandhorst's lot is, and it's 10 feet. Later it was found out that there's a 10-foot strip there that's part of this old road that was never dedicated to the city. And we proved with our witnesses, clearly, going back over 20 years, that those witnesses used it as their residential yard. They had their children play on it. They cut the grass on it. Part of the driveway going into the house is over this strip, and we did identify it as 10 feet. And all of the witnesses that were crucial was Terry Holman. He and his wife lived there. Their depositions were taken. His deposition was taken before the trial. Then a Miss McCormick, who later was a Miss Holman. And they gave plenty of evidence to the court that their children had played on this street, that their children had played on the yard. There was continuous use, and we tacked it. And the roadway, their children parked their cars on this roadway. They had parties and house guests, and they all used this road. Everybody used the road. It was a street. What about Mr. Mondami's argument concerning the initial 10-foot claim that subsequently was 7 1⁄2, and where's the evidence of that, et cetera? I do have that motion in front of me, and we did file the motion. And the reason we did file the motion is because defendant took out the curb, and defendant removed the monument. So in the process of it, he did remove the curb in front of the driveway or between the driveway and the street that went into his personal driveway. In the process, some issues came up in the middle of the trial, and my client went out and discovered at that point in time that he was including the curb in the 10 feet because the pins had been found, and he was familiar with the pins of the property that laid out the property line. We had photographs at that hearing that Judge Adrian did not want to see. Judge Adrian did not ask for evidence in regard to the motion. He heard oral arguments on it, and quite frankly, he said exactly what you said. He said they're not changing the total dimension. All they're doing is saying departure claiming adverse possession is shrinking from 10 feet to 7 1⁄2 feet, excluding the curb, and they're adding that 2 1⁄2 feet onto the easement by prescription. His ruling was they're not expanding it, there's no harm that's been done in this case, and as a result of that, he granted it. Cases were submitted to him by both counsel at that point in time, and the explanation was given, photographs were available, my client was available, the judge granted it. In regard to one of the big problems and one of the things when I first started researching this is the highlight in the only Supreme Court case that I'm saying is really close is the Peterson v. Karubia case, which is Green Street in Champaign. And that case is very similar because it was shown, as in this case, there was no evidence that there was ever an oral agreement between the owner of the road, the developer, and Mr. Brandhorst's predecessors or any other property owners about the use of this road. There was no license given, there was no special indulgence given, it was just used. And the Green Street case in Champaign was very similar. It had six different lots, the parties agreed that they would establish a roadway across the back, there was no agreements between the parties. As years went by, property owners, different property owners came in, and everybody used the road. At one point in time, one of the property owners puts a chain up, and the courts clearly said in that case it's an alleyway, it was used by all the owners as an alleyway, it was used by the suppliers of the businesses that were on Green Street as an alley, it was used by the coalmen to bring coal, it was used by the utility companies, it was used by suppliers for these businesses, it was used as an alley. And they said you don't have to exclude the owner. The owner does not have to be excluded to prove your easement by prescription. You don't have to kick them off of it, as long as your use of it doesn't depend upon the right of another party. And in Corrubia, this road is very similar because everybody used it as a public road. When Mr. Brandhorst testified, he was questioned about, well, you knew that you didn't know all the way up to that road, and he acknowledged it at some point after he bought the property, he saw a survey out there and knew it. But he used it, he used all the property that he claimed to have first possession for, he proved through his predecessors that they used it as their own yard, and he never had anybody that was the owner of the roadway come and tell him he couldn't use it. He never asked the owner of the roadway if he could use it. It's a simple fact that Judge Adrian found it correct that there was no agreement, so you then fall into the presumption when there's no agreement, the continuous use over 20 years, there then becomes a presumption in favor of the plaintiff that continuous use over 20 years does prove the elements of your adverse possession. The court has indicated that deference should be given to the trial court. The burden of proof here is by the benefit that Judge Adrian's decision was against the manifest weight of the evidence. As the case was pending, the Chicago Title v. JS case came out, and again, I think that case as well as the Catholic Bishop case v. Chicago Title, there are similarities, but they're also the same, it's the first district, but I think they came to two different conclusions, and both of them they deferred to what the trial court said. The first part of Mr. Mamdani's argument was, well, we never proved the exact location, and we had the burden of proving it. We proved it from day one when we went in and put Plaintiff's Exhibit No. 2 in evidence, because we had the monuments. It was all laid out, and subsequently, after this photograph was taken, and what caused the lawsuit to be filed is when Mr. Johnson changed the road, he tore it up, he took out the curbs, and he changed the monuments. But we had the proof of the monuments, and the remedy part that they're arguing, they're saying, well, that's not an appropriate remedy. The remedy that the judge said is put it back the way it was, and in fact, the judge made a specific finding in his ruling that the conduct of the defendant was in reckless disregard for the property rights of the plaintiff. So the judge had feelings on the case as to what the appropriate remedy would be, finding that Mr. Johnson basically would not change the road at his own insistence and did not consider the rights that could have occurred and that did ultimately occur when the trial was concluded. There's a lot in the brief about we haven't proven open and notorious. The photograph, it is open and notorious. There's a lot in that we haven't proved adverse possession. There's even an argument in the reply. Well, one witness, we allege that we planted flowers on this seven and a half feet, and that witness really said the flowers may have been somewhere else. The bottom line is that it was treated by a yard. All the witnesses for the 20 years clearly told the judge that it was their yard. They mowed it. They took care of it. It was part of the rest of the yard right up to the curb, and the adverse possession was there. It was proven. The judge spent a lot of time on the case. He took it under advisement. He gave a very detailed decision, and we're asking the court here to affirm his decision and deny the appeal. What about the remedies that were ordered? The remedy that he ordered in the ruling was simply that he put it back the way it was, and it's his problem if it cost him money because he took it out. He could have waited until the lawsuit was concluded, so he took that risk. Was that done while this litigation was pending? He started the road in 2009, in the spring of 2009, and he gave my client I think it was less than a week's notice that he was going to do it, and the lawsuit I believe should be in the diary. I think it was filed. I think he started it in the spring of 2009. There were some letters, negotiations trying to resolve it, and I think we started it in January of 2010, and he improved it afterwards several times. Thank you. All right. Thank you, Mr. Timurwoki. Mr. Mondani, do you have any rebuttal? Yes, Your Honor. All right. Your Honors, first of all, I think just to be clear, I think the record is pretty clear on this. The removal of the curb, the alterations to the road happened prior to suit being filed. Mr. Brantworth's testimony about his measurements also took place after the curb was removed, so when Mr. Brantworth argued in his motion for leave to amend that he needed to amend because the curb was removed after he filed his complaint, simply not true. The removal of the curb took place beforehand, and he testified at length. He measured those dimensions at 10 feet after the curb was removed, and so the necessity in terms of if the argument was made that the amendment was necessary because the removal took place, it's simply not true and not supported by the evidence. With regard to the Peterson v. Karubia case, first of all, there's several distinctions between that case and this case factually, starting with the fact that the easement that the court ultimately granted in that case ran over multiple property owners. All of the property owners in this row of buildings all had access to this common driveway. The other critical factor in that case was that the court found that the building owner didn't have any other access to those services. They described it as it's a busy street in front. There's no way to get coal, get service delivery, things like that, to that building without access through that easement. The other thing that Mr. Timberwolke mentioned is this notion that if you've shown the various elements on the prescriptive easement, that somehow a presumption shifts and goes in favor of the claimant as to all of the elements. It doesn't shift as to all of the elements. The only presumption that ever shifts to a prescriptive easement claimant is a presumption of hostility assuming all of the other elements are shown. And there is no understanding or notion of where the origin of the easement claim was made. The final thing that I would mention is with regard to the remedies and the finding that Mr. Johnson's actions were in reckless disregard. That's fine. That would justify the imposition of perhaps some other form of remedy. That was what the court used in the JS2 case to justify the imposition of the injunction. The other remedies that were granted in that case were based on another theory entirely. They were based on trespass theory. So as far as we're looking at here, the remedies that the court is granting, again, they weren't tied to the evidence that was presented. There was no evidence presented that the gravel road versus the blacktop was somehow impeded the ability for ingress and egress. And there was no evidence presented that the curb was necessary for ingress and egress. If the court doesn't have any other questions. All right. Thank you, Your Honor. Thank you, counsel. The court will stand in recess.